UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEIVY PINEDA-PEGUERO,
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.

Civil No. 3:16-CV-128 (VLB)
Criminal No. 3:14-CR-225 (VLB)

November 16, 2018

# MEMORANDUM OF DECISION DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 [DKT. 1]

Petitioner, Deivy Pineda-Peguero ("Petitioner" or "Mr. Pineda"), seeks to have his sentence vacated pursuant to 28 U.S.C. § 2255. Mr. Pineda claims that his counsel provided ineffective assistance at sentencing based on his failure to argue for a drug quantity less than the quantity Mr. Pineda stipulated to in the plea agreement. For the foregoing reasons, the Court finds that Mr. Pineda's claim is not meritorious and therefore, the Court denies his motion.

## Background

On November 19, 2014, Mr. Pineda was indicted and charged with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *United States v. Gonzalez et al*, No. 14-CR-225 (VLB) (hereinafter "*Gonzalez*") [Dkt. 17 (Indictment)]. Mr. Pineda was indicted along with eight other individuals. All of the defendants pled guilty. *See generally, Gonzalez.*

On July 7, 2015, Mr. Pineda's co-defendant, Mr. Wilfredo Garcia-Quinones, pled guilty to conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *See Gonzalez*, [Dkt. 151 (Minute Entry for Change of Plea H'rg)]. In his plea agreement, Mr. Quinones stipulated that the offense conduct involved "a quantity of at least 150 grams, but less than 196 grams, of cocaine base." *See Gonzalez*, [Dkt. 155 (Plea Agreement) at 4]. On December 22, 2015, the Court sentenced Mr. Quinones to 60 months in prison followed by a term of supervised release of four years. *See Gonzalez*, [Dkt. 311 (Hr'g Minute Entry); Dkt. 313 (Judgment)]. The Court entered the judgment against Mr. Quinones on December 23, 2015. *See Gonzalez*, [Dkt. 313].

On September 23, 2015, Mr. Pineda pled guilty to conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. *See Gonzalez*, [Dkt. 221 (Minute Entry for Change of Plea H'rg)]. In the plea agreement, Mr. Pineda stipulated that the offense conduct "involved 280 grams or more of a mixture and substance containing cocaine base, and this quantity was reasonably foreseeable to the defendant." *See Gonzalez*, [Dkt. 222 (Plea Agreement) at 1]. Mr. Pineda's plea agreement also included an appeal waiver and Mr. Pineda waived his right to appeal a sentence that did not exceed 71 months. *See Gonzalez*, [Dkt. 222 (Plea Agreement) at 5].

At his change of plea hearing, Mr. Pineda acknowledged the drug quantity in response to the Court's question, "And how many grams of cocaine base did you understand?" [Dkt. 7-4 (Ex. D Change of Plea H'rg Tr.) at 34:9-10]. Mr. Pineda answered, "280 or more." *Id.* at 34:11. The Court also directly asked the

Government how it would show that the conspiracy involved at least 280 grams of cocaine base. *Id*. at 38:23-25. The Government indicated that it would rely on a wiretap which ran for 60 days and included references to drug quantities in addition to testimony from one of the co-defendants. *Id*. at 39:1-12. Mr. Pineda acknowledged that he heard and agreed with the Government's statements. *Id*. at 39:14-22.

On January 13, 2016, the Court sentenced Mr. Pineda to 71 months in prison followed by a term of supervised release of three years. *See Gonzalez*, [Dkt. 328 (Hr'g Minute Entry); Dkt. 351 (Judgment)]. The Court entered the judgment against Mr. Pineda on January 15, 2016. *See Gonzalez*, [Dkt. 351]. At sentencing, Mr. Pineda's counsel made three principle arguments: (1) Mr. Pineda was eligible for the safety valve under U.S.S.G. § 5C1.2; (2) the Court should not consider a prior narcotics charge which had been dismissed; (3) the Court should consider Mr. Pineda's lack of criminal history, successful employment during pretrial detention, and prior work history; and (4) the Court should apply a 1:1 cocaine to crack cocaine ratio under *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). *See Gonzalez*, [Dkt. 314 (Def.'s Mem. in Aid of Sentencing) and Dkt. 328 (Hr'g Minute Entry); *see also* [Dkt. 7-5 (Ex. D Sentencing Tr.)].

The Court expressly considered each of these arguments. The Court applied the safety valve. [Dkt. 7-5 (Ex. D) at 49:19-21]. The Court also credited counsel's argument that Mr. Pineda's sole prior arrest should not be considered and ordered probation to remove it from Mr. Pineda's presentence report. *Id*. at 14:3-21. The Court considered Mr. Pineda's criminal history, adjustment to detention, and prior

employment. *Id.* at 50:1-51:13. The Court responded to counsel's argument for a sentence based a 1:1 cocaine to crack cocaine ratio in detail and explained that cocaine is a more dangerous substance because it is cheaper, more available, and more debilitating. *Id.* at 52:15-55:2.

On January 20, 2016, Mr. Pineda appealed his sentence. *See Gonzalez*, [Dkt. 340 (Notice of Appeal)]. On May 24, 2016, counsel for Mr. Pineda moved to withdraw the appeal and to be relieved as attorney because Mr. Pineda wished to raise an ineffective assistance of counsel claim. *United States v. Gonzalez*, 16-357 (hereinafter "*Gonzalez* Appeal") [Dkt. 35 (Mot. to Withdraw)]. On May 26, 2016, the Second Circuit issued a summary order granting Mr. Pineda's motion to relieve his counsel and withdraw his appeal. *Gonzalez* Appeal, [Dkt. 45 (Order)].

On January 27, 2016, Mr. Pineda timely filed the instant § 2255 motion. *See* [Dkt. 1]. Mr. Pineda claims that his counsel was ineffective because at the sentencing of Mr. Quinones, one of Mr. Pineda's co-defendants, evidence was presented that the drug quantity involved in the conspiracy was only 196 grams. Therefore, Mr. Pineda claims his counsel should have argued for leniency based on the discrepancy between the actual drug quantity involved in the conspiracy and the larger quantity, 280 grams, to which Mr. Pineda pled guilty.

In response, the Government raises four main points. First, the Government argues that Mr. Pineda's claim is based on a misunderstanding of what the Government could prove with respect to Mr. Pineda as opposed to what it could prove with respect to Mr. Quinones. Second, Mr. Pineda stipulated that the conspiracy involved a drug quantity of 280 grams or more. Third, Mr. Pineda's

4

counsel chose to argue that the Court apply the 1:1 cocaine to crack cocaine ratio (which would have resulted in a sentence of 30 to 37 months) as opposed to arguing against the drug quantity stipulated in the plea agreement (which would have resulted in a guideline range of 37 to 46 months). Fourth, Mr. Pineda's counsel adequately represented Mr. Pineda at sentencing by arguing to the Court that Mr. Pineda's demonstrated employment history and lack of criminal history justified a lower sentence.

## Legal Standard

Section 2255 enables a prisoner in federal custody to petition a federal court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Section 2255 imposes a one year period of limitation, which runs from the latest of "(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through exercise of due diligence." *Id.* at § 2255(f).

Relief under § 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks

and citation omitted).  Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

Ineffective assistance of counsel is a qualifying constitutional error.  In *Strickland v. Washington*, the Supreme Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  466 U.S. 668, 686 (1984).  The Supreme Court laid out two elements required to show ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

As to the first prong, "the proper standard for attorney performance is that of reasonably effective assistance."  *Id.*  This requires "objective reasonableness" "under prevailing professional norms."  *Id.* at 688.  Counsel has a "duty to bring to bear such skill and knowledge as will render the trial [or other judicial proceeding] to a reliable adversarial testing process," but counsel also has "constitutionally

6

protected independence" and "wide latitude . . . in making tactical decisions." *Id.* at 688-89. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* This requires "a court [to] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Thus, the petitioner must "affirmatively prove prejudice." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. This requires the court to "consider the totality of the evidence before the judge or jury." *Id.* As the Second Circuit has observed, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Linstadt v. Keane*, 239 F. 3d 191, 199 (2d Cir. 2001).

7

## Analysis

Mr. Pineda argues that his counsel's performance was deficient because his counsel failed to argue for leniency at sentencing based on what Mr. Pineda believes was a discrepancy because the drug quantity that he pled to and the drug quantity involved in the entire conspiracy. [Dkt. 1 at 2]. Mr. Pineda's claim fails because his allegations do not overcome the presumption that counsel's decision was objectively reasonable.[1]

On September 23, 2015, Mr. Pineda entered his guilty plea and the Court found that it was knowingly and voluntarily made and not coerced. *Gonzalez*, [Dkt. 226 (Findings and Recommendations) and Dkt. 230 (Order Adopting Findings and Recommendations)]. The plea agreement stipulated to a drug quantity of 280 grams. Had his counsel argued for a lower drug quantity, as Mr. Pineda suggests, the Government would have argued against the application of the safety valve and downward adjustments for acceptance of responsibility.[2] This would have resulted in a much higher sentence range, 63 to 78 months, than the range counsel advocated for under the 1:1 cocaine to crack cocaine ratio, 30 to 37 months. As described in detail above, the Court considered counsel's argument and responded to it at length during sentencing. [Dkt. 7-5 (Ex. E) at 52:15-55:2]. Although counsel's argument was ultimately unsuccessful, he clearly provided

---

[1] Mr. Pineda failed to argue the second *Strickland* prong that there is a reasonable probability, absent counsel's errors, that the outcome of the proceeding would have been different.

[2] Even if the Government still agreed to Mr. Pineda's eligibility for the safety valve and downward adjustment for acceptance of responsibility, his guideline range sentence would have been 37 to 46 months which is still longer than the sentence his counsel advocated for by arguing for the 1:1 cocaine to crack cocaine ratio.

adequate representation to Mr. Pineda. The Court finds that counsel's actions were objectively reasonable in light of Mr. Pineda's explicit stipulation, in the plea agreement and during the change of plea hearing, that the conspiracy involved 280 grams of cocaine base.

The Court also finds that counsel's performance was objectively reasonable based on the additional arguments he presented to the Court at sentencing. Counsel argued that Mr. Pineda's work history, work history while incarcerated awaiting sentencing, and lack of criminal history justified a below guideline sentence. The Court was not persuaded because Mr. Pineda's work history was not verified and his good behavior in prison is to be expected when he is awaiting sentencing. *Id.* at 50:21-51:9, 50:5-20. Ultimately, the Court was not persuaded because of the seriousness of the offense and Mr. Pineda's involvement. *Id.* at 52:1-14.

Mr. Pineda relies heavily on *Johnson v. United States* to support his claim. 313 F.3d 815 (2d Cir. 2002). In *Johnson,* petitioner was convicted following trial of possession with intent to distribute cocaine base. *Id.* at 816. At trial, the government produced evidence that petitioner sold cocaine base to an informant and the parties stipulated that the drug quantity was 48.3 grams. *Id.* The parties disagreed about whether petitioner agreed to sell over 56.7 grams, but the presentence report recommended a base offense level based on this disputed amount and petitioner's counsel failed to object. *Id.* The district court adopted the presentence report's recommendation and sentenced petitioner on the higher

quantity. *Id.* The Second Circuit found that counsel's failure to object deprived petitioner of effective assistance of counsel. *Id.* at 818.

This case is distinguishable for several reasons. First, Mr. Pineda stipulated to the drug quantity in his plea agreement and at his change of plea hearing. Second, the Application Note to § 2D1.1 on which the Second Circuit based its decision does not apply in this case. The Second Circuit cited Application Note 12 (now Application Note 5) which states, "[i]n an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." *Id.* It held that "where the sale was completed and there was no evidence that the 48.3 grams of crack actually sold did not represent the 'scale of the offense,' counsel plainly should have objected that defendant's offense level was squarely covered by Application Note 12 and was properly calculated at 30." *Id.* This reasoning does not apply here. Mr. Pineda's conduct of conviction involved a lengthy drug conspiracy involving multiple participants, not an isolated drug transaction. Therefore, there is no comparison, like in *Johnson*, between the quantity agreed to be sold and the quantity actually sold. *Johnson* does not apply.[3]

More fundamentally, Mr. Pineda misunderstands the relationship between his sentencing and that of Mr. Quinones. The issue before the Court at sentencing is not the amount of drugs involved in the conspiracy, but rather the amount of

---

[3] Mr. Pineda also directs the Court to *United States v. Soto*, 132 F.3d 56, which is also distinguishable because it involved counsel's failure to request a downward adjustment based on the petitioner's minor role in the offense. Mr. Pineda's claim does not involve counsel's failure to identify a relevant guideline provision. *Id.* at 59.

10

drugs reasonably foreseeable to the defendant being sentenced. United States Sentencing Commission, *Guidelines Manual*, §1B1.3, comment. (n.2) (Nov. 2018). Thus, the Court considers the reasonably foreseeable quantity for each defendant based on each defendant's offense conduct, his individual role in the conspiracy. Conspirators may play distinctly different roles in a conspiracy and consequently may have varying amounts of information about the nature and scope of a conspiracy. For example, the head of the conspiracy knows more about the nature and scope of the conspiracy than a street runner and individuals involved at the intervening levels of the hierarchy.

The roles played by Mr. Quinones and Mr. Pineda's were dissimilar. Mr. Quinones was one of a few individuals involved in making crack cocaine from powder cocaine for Mr. Pineda's right-hand man, Mr. Gonzalez. *See Gonzalez*, [Dkt. 333 (Presentence Investigation Report) at ¶¶ 11-13]. By contrast, Mr. Pineda was Mr. Gonzales's supplier. *Id.* at ¶¶ 42, 54. There is nothing on the record which suggests Mr. Quinones was aware of all the drugs Mr. Pineda's supplied to Mr. Gonzalez. On the contrary, the fact that Mr. Quinones was not the only person who converted the powder cocaine into cocaine base leads to the logical conclusion that he likely did not. Mr. Quinones stipulated in his plea agreement that the amount of crack cocaine reasonably foreseeable to him alone was 196 grams.

In contrast, Mr. Pineda was the leader and the individual bringing the distribution quantities into Connecticut from New York to cook into crack cocaine and distribute. Because of their very different roles, what was reasonably foreseeable to Mr. Pineda was not reasonably foreseeable to Mr. Quinones.

11

Moreover, the Government never claimed that the total amount of crack cocaine involved in the conspiracy was 196 grams of less. Mr. Quinones admitted in his plea agreement that the amount of crack cocaine reasonably foreseeable to him alone was 196 grams. As explained in detail above, at Mr. Pineda's change of plea hearing the Government explained that 280 grams was reasonably foreseeable to Mr. Pineda based on wiretap conversations and corroborating testimony from a cooperating witness.

For the reasons set forth above, the Court finds it is not necessary to hold a hearing on Mr. Pineda's claim. Generally, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). The Court exercises its discretion to "avoid[] the delay, the needless expenditure of judicial resources, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" in cases such as the one currently before the Court. *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (holding that it was within the district court's discretion to determine that a hearing was unnecessary with respect to the petitioner's claim because the court already had an affidavit from trial counsel and a statement from the petitioner). As such, the Court concludes that a hearing is not warranted and that, based on the papers, Mr. Pineda conclusively fails to show that he is entitled to relief.

## Conclusion

For the foregoing reasons, Mr. Pineda's § 2255 motion to vacate, set aside, or correct his sentence is DENIED. Because Mr. Pineda's claims are without merit,

a certificate of appealability of this decision is DENIED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

                                                    /s/
                                    **Hon. Vanessa L. Bryant**
                                    **United States District Judge**

**Dated at Hartford, Connecticut: November 16, 2018.**